SEDGWICK LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
*Attorneys for Defendant*
ACE AMERICAN INSURANCE COMPANY

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WOODCLIFF LAKE BOARD OF EDUCATION,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Civil Action No.: 2:11-cv-02704(SRC)<br><br>**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE STAY THE ACTION, AND TO COMPEL ARBITRATION** |

NY/701719v1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT 1

STATEMENT OF FACTS ............................................................................................................... 2

    A.    The Underlying Action ............................................................................................. 2

    B.    The ACE Policy ....................................................................................................... 2

LEGAL ARGUMENT ...................................................................................................................... 5

    A.    This Motion Constitutes Illinois Union's Responsive Pleading ............................... 5

    B.    The Complaint Against ACE American Should Be Dismissed, And Plaintiff Should Be Compelled To Arbitrate ............................................................................ 6

CONCLUSION .................................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Allied-Bruce Terminix Cos., Inc. v. Dobson,
 513 U.S. 265 S. Ct. 834 (1995) ................................................................................................6

Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,
 585 F.2d 39 (3d Cir. 1978) ......................................................................................................8

Dean Witter Reynolds, Inc.,
 470 U.S. 213, 105 S. Ct. 1238 (1985) ......................................................................................7

Evans v. Hudson Coal Co.,
 165 F.2d 970 (3d Cir. 1948) ................................................................................................5, 6

Goodwin v. Elkins & Co.,
 730 F.2d 99 (3d Cir. 1984) ......................................................................................................6

In re Burlington Coat Factory Securities Litigation,
 114 F. 3d 1410 (3d Cir. 1997) .................................................................................................3

In re Donald J. Trump Casino Securities Litigation Taj Mahal Litigation,
 7 F. 3d 357 (3d Cir. 1993) .......................................................................................................3

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
 473 U.S. 614 (1985) .................................................................................................................7

Pension Benefit Guar. Corp. v. White Consolo Industries, Inc.,
 998 F.2d 1192 (3d Cir. 1993) ..................................................................................................3

RCM Tech., Inc. v. Brignik Tech., Inc.,
 137 F. Supp. 2d 550 (D.N.J. 2001) ..........................................................................................8

Republic of the Philippines v. Westinghouse Elec. Corp.,
 714 F. Supp. 1362 (D.N.J. 1989) .............................................................................................8

Salvadori v. Option One Mortgage Corp.,
 420 F. Supp. 2d 349 (D.N.J. 2006) ......................................................................................7, 8

Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of Am.,
 207 F.2d 450 (3d Cir. 1953) ....................................................................................................7

Volt Info. Sci., Inc. v. Board of Tr. of Leland Stanford Junior Univ.,
 489 U.S. 468, 109 S. Ct. 1248 (1989) ......................................................................................6

**Statutes**

9 U.S.C. § 2 (Federal Arbitration Act) ("FAA") ..........................................................................6, 7

9 U.S.C. § 3 ....................................................................................................................................7

Fed. R. Civ. P. 12(b)(1) ........................................................................................................ 1, 5, 6, 9

N.J.S.A. 2A:30A-2 (New Jersey Prompt Payment Act) .............................................................1, 2

Defendant, ACE American Insurance Company ("ACE American"), by its attorneys, Sedgwick, LLP, submits the following motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) dismissing plaintiff's complaint, or in the alternative to stay the action, and to compel arbitration.

## PRELIMINARY STATEMENT

This is a declaratory judgment action in which plaintiff, the Woodcliff Lake Board of Education (the "Woodcliff Lake BOE"), seeks coverage under an insurance policy for an underlying action commenced against the Woodcliff Lake BOE. The underlying action is captioned <u>Sal Electric Co., Inc. v. Woodcliff Lake Board of Education and SBN Enterprises, Inc.</u>, and was filed in the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-1580-08 (the "Underlying Action). The complaint in the Underlying Action alleges that the Woodcliff Lake BOE failed to pay a contractor for electrical work it performed as part of renovations to two schools and asserts causes of action for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing and violations of the New Jersey Prompt Payment Act (N.J.S.A. 2A:30A-2). (See Pickett Cert., Exhibit 1.) According to the Woodcliff Lake BOE's complaint in this action, it settled the Underlying Action for $162,000.

The Woodcliff Lake BOE improperly commenced this action against ACE American seeking a declaration of coverage under ACE Advantage® Education Legal Liability and Employment Practices Liability Policy No. EON G21680655 002 issued to the Woodcliff Lake BOE covering the period from July 1, 2007 to July 1, 2008 (the "ACE Policy"). (See Pickett Cert., Exhibit 2.) Notably, the ACE Policy contains a alternate dispute resolution ("ADR") provision mandating the submission of all disputes relating to the ACE Policy to an ADR process consisting of either: (a) mediation followed by arbitration; or (b) arbitration.

In view of the mandatory ADR clause, by letter dated May 9, 2011, ACE American advised the Woodcliff Lake BOE that this action was commenced in contravention of the ACE Policy and

demanded that it dismiss the complaint as against ACE American on a "without prejudice" basis. To date, the Woodcliff Lake BOE has refused to dismiss its complaint against ACE American.

Any declaration concerning ACE American's coverage obligations may not be decided by this Court in view of the ACE Policy's mandatory ADR provision. The arbitration provision requires that the Woodcliff Lake BOE and ACE American shall submit any dispute or controversy arising out of or relating to this *Policy* or the breach, termination or invalidity thereof to the alternative dispute resolution ... process set forth in this Section." (<u>See</u> Pickett Cert., Exhibit 2.) As such, plaintiff's complaint is subject to dismissal, and plaintiff must be compelled to abide by the ACE Policy's ADR provision.

## STATEMENT OF FACTS

### A.     The Underlying Action

The plaintiff in the Underlying Action alleges that the Woodcliff Lake BOE failed to pay a contractor for electrical work it performed as part of renovations to two schools and asserts contains causes of action for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing and violations of the New Jersey Prompt Payment Act (N.J.S.A. 2A:30A-2). According to the complaint in this action, the Woodcliff Lake BOE settled the Underlying Action by making payment to the plaintiff in the Underlying Action in the amount of $162,000. By this action, the Woodcliff Lake BOE seeks reimbursement of the settlement amount and its attorney's fees incurred in defense of the Underlying Action.

### B.     The ACE Policy

ACE American issued the ACE Policy to the Woodcliff Lake BOE which generally provides employment practices liability coverage for Damages and Claim Expenses Claims in excess of a $5,000 retained limit for which the Insured becomes legally obligated to pay because of a Claim first

made against the Insured and reported to the Insurer during the Policy Period for any Wrongful Act taking place on or subsequent to the Retroactive Date.[1]

For purposes of this motion, the only pertinent provision of the ACE Policy is Section XVIII. [Alternate Dispute Resolution] of the ACE Policy, which provides as follows:

> The *Insureds* and the *Insurer* shall submit any dispute or controversy arising out of or relating to this *Policy* or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this Section.
>
> Either the *Insured* or the *Insurer* may elect the type of ADR process discussed below; provided, however, that the *Insured* shall have the right to reject the choice by the *Insurer* of the type of ADR process at any time prior to its commencement, in which case the choice by the *Insured* of ADR process shall control.
>
> There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the *Insurer* and the *Insured* mutually agree, in which the *Insured* and the *Insurer* shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the *Insured* and the *Insurer* mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this Section; provided, however, that no such arbitration shall be commenced until at least 60 days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

---

[1] Consideration of the terms of the ACE Policy is proper given that the Woodcliff Lake BOE's claims are based upon it. See, Pension Benefit Guar. Corp. v. White Consolo Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); In re Donald J. Trump Casino Securities Litigation Taj Mahal Litigation, 7 F. 3d 357, 367 (3d Cir. 1993) ("We recently held that 'a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'.") (quoting, Pension Benefit); In re Burlington Coat Factory Securities Litigation, 114 F. 3d 1410, 1426 (3d Cir. 1997) (However, an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion (to dismiss) into one for summary judgment.") (modification in original).

>Either ADR process may be commenced in New York, New York or in the state indicated in item 1 of the Declarations as the principal address of the *Named Insured*. The *Named Insured* shall act on behalf of each and every *Insured* in connection with any ADR process under this Section.

Under the plain terms of this provision, the Woodcliff Lake BOE and ACE American "shall submit any dispute or controversy arising out of or relating to this Policy or the breach, termination or invalidity thereof to the alternative dispute resolution ... process set forth in this Section." The ADR process is clearly mandatory rather than optional – the ACE Policy states that the parties "shall" submit any disputes to the ADR process.

There are "two choices of ADR process" under the terms of the ACE Policy. The first calls for "non-binding mediation administered by any mediation facility to which the *Insurer* and the *Insured* mutually agree, in which the *Insured* and the *Insurer* shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility." The second calls for "arbitration submitted to any arbitration facility to which the *Insured* and the *Insurer* mutually agree, in which the arbitration panel shall consist of three disinterested individuals." Either ACE American or the Woodcliff Lake BOE may elect the type of ADR process.

In this case, ACE American elected to submit the dispute to arbitration in New York, New York and provided the Woodcliff Lake BOE with notice of this election. (See Pickett Cert., Exhibit 3.) The ACE Policy gives the Woodcliff Lake BOE the right to opt for mediation in advance of any arbitration. Although the ADR provision of the ACE Policy gives the Woodcliff Lake BOE the right to select mediation over arbitration, if the Woodcliff Lake BOE chooses to mediate, the ACE Policy provides that "[i]n the event of mediation, either party shall have the right to commence arbitration in accordance with this Section; provided, however, that no such arbitration shall be commenced until at least 60 days after the date the mediation shall be deemed concluded or terminated." The

arbitration may be commenced in "New York, New York or in the state indicated in Item 1 of the Declarations as the principal address of the *Named Insured*." Accordingly, the arbitration may be brought in New York or New Jersey. (See Pickett Cert., Exhibit 2.)

By the plain language of the ADR provision in the ACE Policy, the mandatory ADR process for resolving coverage disputes is limited to either mediation followed by arbitration, or by arbitration alone. A civil action declaring the rights of the parties is not recognized as an option under the explicit terms of the ACE Policy. This intention to limit the resolution of coverage disputes to the ADR process is further reflected in Section XV. [Action Against the Insurer and Bankruptcy] of the ACE Policy, which provides as follows:

> No action shall lie against the *Insurer*. No person or organization shall have any right under this *Policy* to join the *Insurer* as a party to any action to determine the liability of the *Insured* nor shall the Insurer be impleaded by any *Insured* or its legal representatives. . . .

*     *     *

The Woodcliff Lake BOE commenced this action on or about April 6, 2011, and it was subsequently removed by ACE American to the United States District Court for the District of New Jersey on May 11, 2011. Plaintiff's Complaint demands a declaratory judgment that ACE American is obligated to indemnify it for the settlement amount of the Underlying Action and for its attorney's fees incurred in defense of the Underlying Action. Consequently, the Plaintiff's complaint involves a "dispute or controversy arising out of or relating to this *Policy* or the breach ... thereof," and is subject to the mandatory ADR provision of the ACE Policy.

## LEGAL ARGUMENT

A. **This Motion Constitutes Illinois Union's Responsive Pleading**

ACE American properly brings this motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In Evans v. Hudson Coal Co., 165 F.2d 970 (3d Cir. 1948), the United States Court

of Appeals for the Third Circuit considered whether an application for a stay of litigation in favor of arbitration constituted a pleading as required by Rule 12. The court held that Rule 12(b)(1) permits a defendant to file a motion to dismiss if the issues presented by the suit are referable to arbitration:

> Rule 12(b) (1) will authorize the defendant to make an application for a stay pending arbitration if, as a matter of law, the issues presented by the instant suit are referable to arbitration. The pertinent language of Rule 12(b) (1) provides that a defense of 'lack of jurisdiction over the subject matter', at the option of the pleader, may be asserted 'by motion'. If the issues presented by the instant suit are referable to arbitration, the court below, other conditions of the Arbitration Act being met, must grant the stay and hold its hand until arbitration be completed. It is thus, pending arbitration, deprived of jurisdiction of the subject matter. It follows that if the issues of the instant suit are referable to arbitration, the motion for a stay under Section 3 of the Arbitration Act fulfills the requirements of Rule 12(b).

Id. at 972-73. As such, Illinois Union's instant motion to dismiss the action based upon the ADR Provision is proper under Rule 12 as a responsive pleading to the Woodcliff Lake BOE's Complaint.

B.  **The Complaint Against Ace American Should Be Dismissed, And Plaintiff Should Be Compelled To Arbitrate**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract. [Emphasis added.]

In Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 115 S. Ct. 834 (1995), the United States Supreme Court found that the basic function of the FAA was to overcome the previous reluctance of courts to enforce agreements to arbitrate. See Volt Info. Sci., Inc. v. Board of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 474, 109 S. Ct. 1248, 1253 (1989). The FAA requires

courts to "enforce [arbitration] agreements into which parties had entered," and to "place such agreements 'upon the same footing as other contracts . . . .'" Id. at 474, 109 S. Ct. at 1253.²

"By its terms, the Federal Arbitration Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc., 470 U.S. 213, 218, 105 S. Ct. 1238 (1985). Section 3 of the FAA mandates that a federal district court stay litigation if a party to the dispute demonstrates that there is an arbitration agreement in place that governs the dispute:

> If any suit . . . be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which said suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

9 U.S.C. § 3 (emphasis added).

The United States Court of Appeals for the Third Circuit has held that Section 3, a "purely procedural section, applies to all contracts for arbitration which may be involved in suits properly brought in the federal courts." Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of Am., 207 F.2d 450, 453-54 (3d Cir. 1953). Moreover, under the FAA, "it is well-settled that in determining whether a matter must be submitted to arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether a specific dispute falls within the substantive scope of that agreement." Salvadori v. Option One Mortgage Corp., 420 F. Supp. 2d 349, 356 (D.N.J. 2006) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985)).

---

² The FAA, and federal case law, is controlling in this instance. As indicated in Goodwin v. Elkins & Co., 730 F.2d 99, 108 (3d Cir. 1984), "[i]n enacting the [FAA], Congress intended to establish a uniform federal law over contracts which fall within its scope. Thus, if the Arbitration Act is deemed applicable, federal law applies in construing and enforcing an arbitration clause, even in those cases in which jurisdiction is based on diversity."

With respect to the first prong, it is indisputable that the ACE Policy contains an enforceable agreement to: (a) mediate and, if necessary, arbitrate any coverage disputes, or (b) simply arbitrate the dispute. Under the second prong, the coverage dispute raised by the Woodcliff Lake BOE clearly falls within the scope of the ADR Provision. The Woodcliff Lake BOE, however, has disregarded the ADR provision and commenced this action in violation of the insurance contract conditions.

Under basic contract principles, as well as federal statutory and case law, the ACE Policy's ADR provision should be enforced, plaintiff's complaint should be dismissed as against ACE American and plaintiff should be compelled to mediate and/or arbitrate the coverage dispute. See, e.g., Salvadori, 420 F. Supp. 2d 349 (granting motion to dismiss and compel arbitration in accordance with terms of parties' arbitration agreement); RCM Tech., Inc. v. Brignik Tech., Inc., 137 F. Supp. 2d 550 (D.N.J. 2001) (holding that dispute was subject to arbitration based on arbitration clause contained in parties' purchase agreement); Republic of the Philippines v. Westinghouse Elec. Corp., 714 F. Supp. 1362, 1372 (D.N.J. 1989) (stating that "doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with 'positive assurance' that this dispute was not meant to be arbitrated") (citing Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 44 (3d Cir. 1978)).

## CONCLUSION

For the foregoing reasons, ACE American respectfully requests that the Court issue an Order pursuant to Fed. R. Civ. P. 12(b)(1): (a) dismissing plaintiff's complaint as against defendant ACE American or, alternatively, staying the action as against ACE American, and (b) compelling mediation and/or arbitration of plaintiff's claim against ACE American, and granting such further relief as the Court deems reasonable and just.

Dated:   New York, New York
        June 1, 2011

                                      SEDGWICK LLP

                            By: _____
                                Daniel Pickett
                                125 Broad Street, 39th Floor
                                New York, New York 10004-2400
                                Telephone: (212) 422-0202
                                Facsimile: (212) 422-0925
                                *Attorneys for Defendant*
                                *ACE American Insurance Company*

                                Of counsel:
                                    Joseph K. Powers (*pro hac vice* pending)

To:   Stephen R. Fogarty, Esq.
       FOGARTY & HARA, ESQS.
       16-00 Route 208 South
       Fair Lawn, New Jersey 07410
       *Attorneys for the Plaintiff*
       *Woodcliff Lake Board of Education*